UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

REGINA MOORE-DAVIS,

    *Plaintiff*,

v.

U.S. DEPARTMENT OF THE NAVY;
CARLOS DEL TORO,[1] in his official
capacity as Secretary of the Navy,

    *Defendants.*

No. 21-cv-3402 (DLF)

**MEMORANDUM OPINION**

Regina Moore-Davis, an African American woman and a naval engineer, contends that the U.S. Navy discriminated against her because of her race and sex. Her complaint seeks relief under the Equal Pay Act, 29 U.S.C. § 206(d)(1), and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. The Navy moves to dismiss and for summary judgment. For the reasons given below, the Court will grant the Navy's motion in part and deny it in part.

**I.    BACKGROUND[2]**

Moore-Davis is an African American woman and a single mother. Third Am. Compl. ¶ 5, Dkt. 41. She has worked for the Navy since 2002. *Id.* ¶ 31.

---

[1] When this suit began, Kenneth Braithwaite was the Secretary of the Navy. Compl. at 1, Dkt. 1. When Carlos Del Toro became the Secretary, he was automatically substituted as the proper defendant. *See* Fed. R. Civ. P. 25(d).

[2] In evaluating the Navy's motion to dismiss for failure to state a claim, the Court assumes that the material factual allegations in Moore-Davis's operative complaint are true. *See Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). For the reasons stated, *infra* 12–14, the Court will deny the Navy's motion for summary judgment as premature.

Since 2015, Moore-Davis has served as a "Warfare Systems Certifications Lead." *Id.* ¶¶ 46, 49. In her role, she "ensure[s] that Navy ships are ready for use by certifying that all [their] systems are working." *Id.* ¶ 49. "Each Certification Lead is responsible for different classes of ships." *Id.* ¶ 51. That said, "all Certification Leads perform the same work," and "each Certification Lead may be called on to perform work on another Certification Lead's ships." *Id.* ¶¶ 51–52. For example, "Moore-Davis performed another Certification Lead's work when the other employee was out of the office . . . for a medical issue." *Id.* ¶ 52.

Moore-Davis "is the only African American female Certification Lead." *Id.* ¶ 55. She is also the worst-paid one. *See id.* ¶¶ 54–62. Moore-Davis attributes the difference in pay to her "gender and/or race." *Id.* ¶ 160. Moore-Davis also alleges that the Navy treated her differently in other ways, again because of her race and sex. She says that her supervisor Roderick Wester "spoke to non-minority employees with greater respect; his tone and body language were more hostile when addressing African American and female employees; [and] he gave male employees greater latitude in their work schedule." *Id.* ¶ 83. He "refused to authorize [Moore-Davis's] reimbursement for travel expenses." *Id.* ¶¶ 89–90. And he limited Moore-Davis's opportunities to telework and "request[ed] excessive telework documentation," including when Moore-Davis's daughter dealt with a medical emergency. *Id.* ¶¶ 91–94. White and male employees faced none of these problems. *See, e.g.*, *id.* ¶¶ 90, 106, 112.

When Moore-Davis objected to this behavior, things got worse. Moore-Davis first complained about her telework problems to Vice Admiral Thomas Moore, a senior Navy official, in January 2017. *See id.* ¶¶ 96–97. Later that month, Wester gave Moore-Davis a negative performance review, and in February he "denied [her] additional telework" and "threatened to assign [her] additional duties." *Id.* ¶¶ 98, 105, 107. Moore-Davis contacted the Navy's Equal

2

Employment Opportunity (EEO) office later in February. *Id.* ¶¶ 108–09. In March, Wester denied her still more telework, and in May he gave her "an oral pop quiz on technical specifications of ships." *Id.* ¶¶ 110, 113. In the months and years that followed, and as Moore-Davis' EEO case progressed, Wester handed down another poor performance review and cancelled Moore-Davis's flexible work schedule. *Id.* ¶¶ 115, 118. Ultimately, he issued Moore-Davis a formal Letter of Caution and a Reprimand. *Id.* ¶¶ 124, 126.[3]

Moore-Davis sued the Navy and its Secretary. Compl. at 1 (Dkt. 1); Third Am. Compl. at 1. Her complaint raises six claims: (1) a claim for unequal pay under the Equal Pay Act, (2) a claim for retaliation in violation of the Equal Pay Act, (3) a claim for pay discrimination under Title VII, (4) a claim for non-pay employment discrimination under Title VII, (5) a claim for retaliation under Title VII, and (6) a claim for a hostile work environment under Title VII. Third Am. Compl. ¶¶ 134–86. She seeks damages, an order directing the Navy to increase her pay grade and/or to award front pay, and certain other relief. *Id.* ¶¶ a–f.

The Navy moves to dismiss Moore-Davis's action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment.

## II.   LEGAL STANDARDS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim

---

[3] Moore-Davis also alleges that another Navy employee, Shelly Yost, participated or acquiesced in some of these decisions. *See, e.g.*, Third Am. Compl. ¶ 110 (denial of telework); *id.* ¶ 132 (failure to set aside reprimand).

"allows [a] court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Under Rule 56 of the Federal Rules of Civil Procedure, a litigant may move for summary judgment, "identifying each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "[S]ummary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

Under Rule 56(d) of the Federal Rules of Civil Procedure, a litigant may seek deferral or denial of a motion for summary judgment if she "shows . . . that, for specified reasons, [she] cannot present facts essential to justify [her] opposition." Fed. R. Civ. P. 56(d). "To obtain relief," the litigant must submit an affidavit or declaration outlining the facts she intends to discover, along with reasons why those facts (1) "are necessary to the litigation," (2) could not be produced in opposition to the other party's summary judgment motion, and (3) are "in fact discoverable." *Jeffries v. Barr*, 965 F.3d 843, 855 (D.C. Cir. 2020) (quoting *Convertino v. U.S. Dep't of Justice*, 684 F.3d 93, 99–100 (D.C. Cir. 2012)). "Summary judgment usually 'is premature unless all parties have had a full opportunity to conduct discovery,'" although the Court must decide each Rule 56(d) motion based on "the specific facts and circumstances" rather than "presumptions about a given stage of litigation." *Haynes v. D.C. Water & Sewer Auth.*, 924 F.3d 519, 530 (D.C. Cir. 2019) (quoting *Convertino*, 684 F.3d at 99).

**III.   ANALYSIS**

The Court will not dismiss Moore-Davis's claims for unequal pay under the Equal Pay Act. Nor will it dismiss her retaliation claims under the Equal Pay Act or Title VII. It will, however, dismiss in full her Title VII hostile work environment claim, and it will allow her Title VII employment-discrimination claim to proceed only in part. It will also deny as premature the Navy's Motion for Summary Judgment.

**A.  Motion to Dismiss**

**1.   Count 1: Unequal Pay under the Equal Pay Act**

Under the Equal Pay Act, "[n]o employer having employees subject to any provisions of [the Act] shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1); *accord Thompson v. Sawyer*, 678 F.2d 257, 272 (D.C. Cir. 1982) (requiring "substantially equal work"). The Act does not proscribe wage differences "based on any other factor other than sex." 29 U.S.C. § 206(d)(1).

Moore-Davis states a claim for relief under the Equal Pay Act. The Navy does not dispute that Moore-Davis served as a Navy employee, that it is "subject to" the Act, and that it paid her less than "employees of the opposite sex." *Id.*; *see* Navy's Mem. in Support of Def.'s Mot. to Dismiss or for Summ. J. at 3–5, Dkt. 44 (Navy's Mot.). As to "equal work," Moore-Davis's complaint alleges that she fills essentially the same role and has essentially the same portfolio of work as certain other male Certification Leads, including her immediate predecessor. *See* Third Am. Compl. ¶¶ 63–81. From these allegations, and in light of the Navy's failure to argue

otherwise, the Court may plausibly infer that Moore-Davis performs "equal work" as her male colleagues.[4]  *Cf. Cornish v. District of Columbia*, 67 F. Supp. 3d 345, 361 (D.D.C. 2014) (finding that complaint plausibly alleged equal work when it claimed that plaintiff "performed job functions 'that require or entail substantially the same skill, effort, and responsibility' as at least three specifically-referenced men" (citation omitted)).

Relying on the administrative record from Moore-Davis' Equal Opportunity Office proceedings, the Navy contends that—as a matter of fact—Moore-Davis possessed less skill, exerted less effort, and carried less responsibility than her putative male comparators.  *See* Navy's Mot. at 3–5; Navy's Reply in Further Support of Mot. to Dismiss at 9–12, Dkt. 52 (Navy's Reply).  But in deciding a motion to dismiss, the Court "generally may not consider materials outside the pleadings," including the administrative record.  *Elec. Priv. Info. Ctr. v. IRS*, 575 F. Supp. 3d 84, 88 (D.D.C. 2021).  Count 1 thus survives the Navy's motion to dismiss.

### 2. Count 3: Pay Discrimination under Title VII[5]

Title VII of the Civil Rights Act makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation . . . because of such individuals' race . . . [or] sex." 42 U.S.C. § 2000e-2(a)(1).  To survive a motion to dismiss, a Title VII plaintiff alleging unequal pay must plead facts from which a court may plausibly infer:

---

[4] Much of Moore-Davis's complaint asserts, without elaboration, that she performs the "same" work or carries the "same . . . duties" as other employees. *See, e.g.*, Third Am. Compl. ¶¶ 51, 66–70.  Those assertions arguably amount to legal conclusions that the Court may properly ignore on a motion to dismiss, as opposed to factual assertions it must credit. *Iqbal*, 556 U.S. at 678. *But see Cornish*, 67 F. Supp. 3d at 361 (appearing to rely on similarly generic assertions in denying motion to dismiss).  Because the Navy neither contests this point nor presses this argument in its briefing, it is forfeited. *See* Navy's Mot. at 3–5.

[5] The Navy's briefing does not discuss Count 2, Moore-Davis's Equal Pay Act retaliation claim. *See* Navy's Mot. at 4–6, 13–16.  As a result, the Court will not address that claim.

(1) that she faced differential treatment (2) from her employer (3) with respect to her compensation (4) because of her race or sex, or because of another protected characteristic. *See Chambers v. District of Columbia*, 35 F.4th 870, 874–85 (D.C. Cir. 2022).

Moore-Davis states a claim for unequal pay under Title VII. As with Moore-Davis' Equal Pay Act claim, the Navy does not dispute that it employed her or that it paid her less than its employees of a different race or sex. *See* Navy's Mot. at 6–22. Nor does it contend that the complaint fails to plead facts sufficient to imply that the Navy paid her less "because of" her race or sex. *Chambers*, 35 F.4th at 874–85; *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739–40 (2020). Indeed, the complaint "detailed the events leading to" her lower pay, "provided relevant dates," and "included the" race and sex "of at least some . . . relevant persons" whom the Navy paid more. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

The Navy contends that Moore-Davis has not pled facts sufficient to survive summary judgment under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. Navy's Mot. at 6–22. But *McDonnell Douglas* is "an evidentiary standard, not a pleading requirement." *Swierkiewicz*, 534 U.S. at 510. "Applying the relevant standard," Moore-Davis's complaint "state[s] claims upon which relief could be granted," *id.* at 514, and thus Count 3 survives.

        3.        **Count 4: Discrimination in Terms of Employment under Title VII**

Title VII also forbids discrimination "because of" race or sex, along with certain other protected characteristics, "with respect to . . . [an employee's] terms, conditions, or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). To state a claim for non-pay employment discrimination under Title VII, a plaintiff must establish (1) differential treatment (2) by an employer (3) because of her race, sex, or other protected characteristics (4) as regards her "terms,

conditions, or privileges of employment." *See Chambers*, 35 F.4th at 874–75. The phrase "terms, conditions, or privileges of employment" takes its ordinary meaning, recognizing that Title VII "strike[s] at the entire spectrum of disparate treatment . . . in employment." *Id.* at 874 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)).

Parts of Moore-Davis's complaint allege discrimination in the terms, conditions, or privileges of her employment. Moore-Davis alleges that the Navy "delay[ed] and deni[ed]" her telework, "requir[ed] telework formalities in excess of those required by law," and "cancelled her [flexible] schedule." Third Am. Compl. ¶ 165. All these actions affected where and when Moore-Davis worked and so, as a matter of ordinary English, altered the "terms" and "conditions" of her "employment." *Cf. Freedman v. MCI Telecomms. Corp.*, 255 F.3d 840, 844 (D.C. Cir. 2001) (suggesting, even pre-*Chambers*, that scheduling change amounted to change in terms and conditions of employment); *Ginger v. District of Columbia*, 477 F. Supp. 2d 41, 50 (D.D.C. 2007) (similar); *Black v. Guzman*, No. 22-1873, 2023 WL 3055427, *8 (D.D.C. Apr. 24, 2023) (holding that the suspension of telework benefits changed the plaintiff's "terms" of employment under *Chambers*). And for the reasons given above, Moore-Davis's complaint adequately alleges that the Navy treated her differently because of her race and/or sex.

Other parts of Moore-Davis' complaint, however, do not allege employment discrimination. In particular, Moore-Davis says that Wester gave her a "negative performance appraisal" and "h[eld] [her] to performance standards above her pay grade." Third Am. Compl. ¶ 165. But a poor performance review, without more, is an interlocutory managerial decision rather than a change to an employee's terms or conditions of employment. *Huang v. Wheeler*, 215 F. Supp. 3d 100, 109–10 (D.D.C. 2016). So too, a manager's high expectations do not change an employee's terms or conditions of employment as such. *Cf. Black*, 2023 WL 3055427 at *7

("Merely disagreeing with, or even being upset by, a supervisor's decision" does not alter an employee's conditions of employment). At minimum, without more detail on the "performance standards" the Navy applied, Moore-Davis's performance-standard allegations amount to "wholly conclusory statement[s] of a claim." *Twombly*, 550 U.S. at 561.[6]

Once again, the Navy replies that Moore-Davis's complaint fails under *McDonnell-Douglas*. Navy's Mot. at 6–8. But *McDonnell-Douglas* is not a pleading standard and will not support a motion to dismiss. *Swierkiewicz*, 534 U.S. at 510. Thus, Moore-Davis's theories that the Navy allegedly delayed, denied, and complicated her efforts to telework are viable theories that survive the Navy's motion to dismiss, while her negative performance appraisal and conclusory performance-standard allegations do not.

### 4.     Count 5: Retaliation under Title VII

Independently, Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). "To prove unlawful retaliation" in this Circuit, a plaintiff must show: (1) that she opposed a practice she reasonably thought violated Title VII; (2) that her employer took adverse action against the employee; and (3) that the employer acted "because" of the employee's opposition to the practice. *See McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012).

---

[6] It is not entirely clear what Moore-Davis means by "performance standards." To the extent that Moore-Davis alleges that the Navy expected her to perform different work, or more work, than others because of her race or sex, Moore-Davis may well state a claim for discrimination in her "terms" or "conditions" of employment. *Cf. Bain v. Office of Att'y Gen.*, No. 21-cv-1751, 2022 WL 17904236, *22 (D.D.C. Dec. 23, 2022) ("undesired change in work assignments" may qualify). So too, if the Navy's excessive performance standards caused Moore-Davis concrete injuries—lower pay, an altered schedule, or fewer opportunities to telework—Moore-Davis may still state a claim for the reasons given above. At least as pleaded, however, Moore-Davis has not alleged a viable theory of discrimination (in terms of employment) under Title VII.

Moore-Davis states a claim for retaliation.  For the reasons given above, Moore-Davis's informal report to Vice-Admiral Moore and her formal EEO complaint both plausibly opposed unlawful employment practices.  *See* Third Am. Compl. ¶ 96.  The Navy's negative performance reviews, "delays and denials of telework," and changes to Moore-Davis's schedule following her complaint count as "adverse" actions because they "could well [have] dissuade[d] a reasonable worker from making or supporting a charge of discrimination.'"  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006); *see Saunders v. Mills*, 172 F. Supp. 3d 74, 101 (D.D.C. 2016) (revocation of telework arrangement qualified as "adverse").  And the close temporal connections—often less than a month—between Moore-Davis's informal and formal complaints and the Navy's alleged adverse actions make it more than purely speculative that the adverse actions were retaliatory.  *See Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012) (finding a two-month gap between an employee's protected activity and employer's retaliation sufficient to raise plausible inference of causation).

The Navy replies that Moore-Davis first complained about her telework documentation *before* she filed her informal complaint and, more generally, that some of the adverse actions of which she complains occurred well after she contacted Vice-Admiral Moore or the Navy's Equal Employment Opportunity Office.  Navy's Mot. at 14–16.  But these assertions are irrelevant.  Moore-Davis alleges that, when she complained about discrimination and when her complaints moved forward, Wester and the Navy responded with *other*, additional adverse employment actions in short order.  *See, e.g.*, Third Am. Compl. ¶¶ 88–89 (alleging that Moore-Davis complained to Vice Admiral Moore on January 25 and that, five days later, she received a negative performance review); *id.* ¶¶ 108–10 (alleging that Moore-Davis contacted the Navy's EEO office

on February 23, 2017 and that Wester denied her telework less than a month later).  Against that backdrop, Moore-Davis adequately states a claim for retaliation under Title VII.

> 5. **Count 6: Hostile Work Environment under Title VII**

Last but not least, Title VII does not regulate workplace culture as such.  But a workplace environment may become so discriminatory that it implicitly "alter[s] the conditions of [a] victim's employment."  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).  To decide whether a party has stated a hostile-work-environment claim under Title VII, the Court "looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, [and] its offensiveness."  *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008); *see Harris*, 510 U.S. at 21.  It also considers whether the conduct has "interfere[d] with an employee's work performance."  *Baloch*, 550 F.3d at 1201.

Moore-Davis has not pled a plausible claim for hostile work environment.  Moore-Davis says that she was "subjected to antagonistic, hostile, and unwelcome conduct" in her workplace, including Wester's "oral pop quizzes."  Third Am. Compl. ¶ 179.  But an oral pop quiz, even combined with a supervisor's allegedly "hostile" body language and tone, is not the kind of severe or pervasive conduct that can constructively alter an employee's terms of employment.  *Cf. Baloch*, 550 F.3d at 1201 (holding that "several verbal clashes with [a] supervisor" did not create hostile environment.).  And while Moore-Davis does allege that Wester's attitude led her to bring outside contractors to meetings, Third Am. Compl. ¶ 84, that did not make her workplace hostile.  *Baird v. Gotbaum*, 792 F.3d 166, 172 (D.C. Cir. 2015) ("[T]he standard for severity and pervasiveness is . . . objective.") (emphasis deleted).

Moore-Davis also argues that the Navy's telework denial and scheduling changes created a hostile work environment.  But while those managerial decisions may have altered the terms or

11

conditions of Moore-Davis's employment on their own, they fall short of the "extreme" misconduct that makes a workplace hostile. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *see also Tyes-Williams v. Whitaker*, 361 F. Supp. 3d 1, 9 (D.D.C. 2019) ("[C]ourts in this district are generally skeptical of plaintiffs 'bootstrap[ping] their alleged discrete acts of retaliation into a broader hostile work environment claim.") (quoting *Walden v. Patient-Centered Outcomes Research Inst.*, 177 F. Supp. 3d 336, 345 (D.D.C. 2016)). "Cobbling together a number of distinct, disparate acts will not create a hostile work environment" unless the result is quite extraordinary. *Franklin v. Potter*, 600 F. Supp. 2d 38, 77 (D.D.C. 2009). Accordingly, the Court will dismiss Count 6.

### B. Summary Judgment

In the alternative, the Navy seeks summary judgment under Rule 56. The Court will deny the Navy's motion without prejudice as premature.

Under Federal Rule of Civil Procedure 56(d), the Court may deny a motion for summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The nonmovant must outline the facts she intends to discover, the reasons those facts "are necessary to the litigation," why the facts are not available, and why the facts are discoverable. *Convertino*, 684 F.3d at 99–100. "A Rule 56[d] motion requesting time for additional discovery should be granted 'almost as a matter of course unless the non-moving party has not diligently pursued discovery.'" *Id.* at 99 (quoting *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995)).

Moore-Davis meets each *Convertino* requirement. As Moore-Davis' counsel explains, Moore-Davis will use discovery to depose her supervisor—whom she alleges treated her differently because of her race and sex—and ascertain "whether he had discriminatory animus."

12

Aff. of Kelly Burchell ¶ 47, Dkt. 48 at 148. She may also depose her current and former coworkers, including her immediate (male) predecessor, to ascertain whether they performed equal or comparable work for higher pay. *Id.* ¶¶ 23, 29–33. These statements adequately outline the facts Moore-Davis plans to discover, and those facts are unquestionably "necessary to" her lawsuit. *Convertino*, 684 F.3d at 99; *see, e.g.*, *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045–46 (D.C. Cir. 2008) (finding it "self-evident" that deposition of supervisor might provide reveal evidence "at the heart of" a discrimination claim). Because discovery has not yet begun, the deposition testimony Moore-Davis seeks is not yet available to her. *See* LCvR 16.3(b); *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 97–99 (D.D.C. 2014) (explaining that pre-answer discovery "is not the norm"). And the Court sees no reason why the facts Moore-Davis seeks would not be discoverable once discovery does begin.

The Navy insists that the administrative record from Moore-Davis's EEO proceedings establishes that additional discovery will not support her claims. But the Circuit has repeatedly "rejected the notion that a district court can ordinarily resolve a Title VII complaint based on the administrative record." *Ikossi*, 516 F.3d at 1045 (citing cases). The Navy does not explain why this case is exceptional, and the Court finds that it is not. Even if Moore-Davis could not extract evidence supporting her claims in the Navy's administrative process, Title VII permits her to try again in federal court. *See Hackley v. Roudebush*, 520 F.2d 108, 158–59 (D.C. Cir. 1975) ("[M]erely because an individual testified at the agency level does not mean that he would not be required to testify at trial . . . . [T]estimony is not cumulative merely because it repeats . . . testimony before the agency.").

A short section of the Navy's Reply also suggests that Moore-Davis failed to exhaust certain claims relating to her telework and status as a single mother. Navy's Reply at 5–6. But

the Navy did not raise exhaustion in its opening brief, and "an argument not raised in an opening brief is forfeited." *Anglers Conserv. Network v. Pritzker*, 139 F. Supp. 3d 102, 116 n.10 (D.D.C. 2010).[7] At any rate, the Equal Pay Act does not require exhaustion. *Cruz-Packer v. Dist. of Columbia*, 539 F. Supp. 2d 181, 190 (D.D.C. 2008). As for Title VII, Moore-Davis appears to have aired most—if not all—of the factual allegations in her complaint before the EEOC. *Compare* Moore-Davis Admin. Decl., Dkt. 44-3, *with* Third Am. Compl. ¶¶ 31–133. To the extent that the Navy contends that Moore-Davis failed to exhaust her administrative remedies with respect to specific, discrete discriminatory acts alleged in her complaint, it may raise those arguments in a future motion for summary judgment.

## CONCLUSION

For the above stated reasons, the Navy's Motion to Dismiss or for Summary Judgment is granted in part and denied in part. A separate order consistent with this decision will accompany this memorandum opinion.

September 26, 2023

DABNEY L. FRIEDRICH
United States District Judge

---

[7] Although jurisdictional arguments cannot be forfeited, neither Title VII nor the Equal Pay Act contains a jurisdictional exhaustion requirement. *Artis v. Bernanke*, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011) ("[F]ailure to exhaust administrative remedies is not jurisdictional" under Title VII); *Cruz-Packer*, 539 F. Supp. 2d at 190 ("[T]he Equal Pay Act do[es] not require a plaintiff to first exhaust administrative remedies.").